IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| MAIN STREET, LLC, an Anguillan LLC,<br><br>    Plaintiff,<br><br> v.<br><br>PAUL ELLIS INVESTMENT ASSOCIATES, LLC, a Pennsylvania limited liability company; ANDREW PAUL, an individual; JOHN D. ELLIS, an individual; and WELLS FARGO BANK, N.A., a national banking association,<br><br>    Defendants. | CASE NO.<br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, MAIN STREET LLC ("Plaintiff" or "MAIN STREET"), an Anguillan limited liability company, by and through the undersigned counsel, files this Complaint against Defendants PAUL-ELLIS INVESTMENT ASSOCIATES LLC ("Defendant PEIA"), a Pennsylvania limited liability company, ANDREW PAUL, an individual, ("Defendant Paul"), JOHN D. ELLIS ("Defendant Ellis"), an individual, and WELLS FARGO BANK N.A. ("Defendant Wells Fargo"), a national banking association, and states as follows:

**PARTIES**

1. Plaintiff, MAIN STREET, is an Anguillan Limited Liability Corporation, incorporated in and doing business in Anguilla, British West Indies.  By means of a written assignment, Fidelity Insurance Company, Ltd., transferred to MAIN STREET all right, title and

interest to any and all claims arising out of or relating to the circumstances and activities relating to the facts contained herein.

2. Defendant PEIA is a Pennsylvania Limited Liability Company, incorporated and doing business in the State of Pennsylvania. It holds itself out as "an independent and privately owned SEC registered investment advisory firm who provides professional management of portfolios for institutional and international investors." *See* www.paulellisllc.com/about-us.html, dated September 22, 2012.  Upon information and belief, the sole owners/members of PEIA are Defendants Paul and Ellis.

3. Defendant Paul is an individual and resident of the State of Pennsylvania.  Paul promotes himself and PEIA to potential investors by stating that "[i]n 2009, [Paul] successfully started Paul-Ellis Investment Associates with decade long friend and business partner John Ellis. Together they have assembled an arsenal of core alternative investment strategies that have produced consistent absolute returns in the worst of market environments." *Id.*

4. Defendant Ellis is an individual and resident of the State of Pennsylvania.  He similarly promotes himself and PEIA to potential investors by stating that "[i]n 2009, [Ellis] successfully started Paul-Ellis Investment Associates with decade long friend and business partner Andy Paul. Together they have assembled an arsenal of core alternative investment strategies that have produced consistent absolute returns in the worst of market environments." *Id.*

5. Defendant Wells Fargo is a national banking association, organized and existing under the laws of the United States of America, and its charter designates that its main office is located in South Dakota.  For diversity purposes, Defendant Wells Fargo is deemed a citizen of South Dakota.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).  Defendant Wells Fargo is

registered to do business in Florida as an "Alien Business Organization" and lists on its Florida registration documents San Francisco, California as the location of its "principal address." Upon information and belief, Defendant Wells Fargo has locations in Miami-Dade County, Florida.

## JURISDICTION AND VENUE

6. This is an action for money damages greater than $75,000.00, exclusive of costs, interest, or attorney's fees.

7. This Court has subject matter jurisdiction over MAIN STREET's claims under 28 U.S.C. §1332. There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3).

## FACTS

PEIA and its Principals Wrongful Conduct

9. Plaintiff is proceeding upon an assignment of claims by Fidelity Insurance Company, Ltd., an Anguillan insurance company, charted in Anguilla, British West Indies, ("FIC"), against the Defendants.

10. In 2009, FIC was introduced to PEIA through a now-defunct Florida company called Fortress Global Wealth Management Ltd. ("FGWM"). PEIA represented itself as a "Registered Investment Advisor."

11. PEIA touted its market prowess and "proprietary" wealth management approach, utilizing what it called "five proprietary developed [sic] core investment strategies [.]" *See* www.paulellisllc.com/stragtey.html. These five strategies included the following so-called portfolio funds: (1) the Cash Alternatives Portfolio; (2) the Balanced Portfolio; (3) International

Equity Portfolio; (4) Global Income Portfolio; and (5) Strategic Growth Portfolio.  PEIA coined these strategies as "Trade Wind Portfolios" and touted that they "had been structured to provide complete clarity and transparency seldom associated with International and Institutional investments." *Id*.

12. PEIA further boasted that its proprietary strategies provided the following:

### Relative Strength

Relative Strength is simply the continuous comparison of the performance of two or more investments. When an investment begins losing ground it systematically eliminates itself from the portfolio. Likewise when an investment gains ground it systematically adds itself to the portfolio.

### Asset Protection

Unfortunately there will always be periods of market chaos. By having a defensive strategy we can preserve capital during these periods and have the confidence to invest capital when prudent.

### Product Design

- The Trade Winds Portfolios have been structured to provide complete clarity and transparency seldom associated with International and Institutional investments.

### Liquidity

- New purchases will be accepted immediately
- Liquidations require 15 calendar days advanced notice in writing
- All redemptions will be available 5 business days after the 1st of the month following the redemption request

### Transparency

- Management and Trust Advisors will have access to the portfolio composition and values on a daily basis
- Updates will be provided from sub-advisors monthly or upon request
- Online updates through PEIA and Merrill Lynch

*Id.* (emphasis added).  PEIA made all of the foregoing representations, knowing that FIC would rely upon them.

13. Defendant PEIA's principals, including Defendants Paul and Ellis, made the foregoing representations to FIC and induced FIC to establish five identical insurance dedicated limited liability companies -- based on these "Trade Winds Portfolio Strategies" -- that thereafter invested in the PEIA portfolios.

14. On December 22, 2009, in reliance on PEIA's representations regarding its strategies, FIC established the following five limited liability companies: FIC Special Opportunities LLC, FIC Balanced Portfolio LLC, FIC Strategic Growth Portfolio LLC, FIC International Equity Portfolio LLC, and FIC Global Income LLC.  All of these limited liability companies (wholly owned by FIC) invested in the correspondingly named PEIA portfolio funds.

15. In the time period between 2010 and 2011, FIC invested in excess of five million dollars in PEIA portfolio funds.

16. Starting in 2010, transparency was available to FIC through monthly reports and online access.  However, after April 2012, PEIA ceased to provide reports.  Numerous demands, both in writing and orally, have been made for reports since then, but none have been forthcoming.  While they were still answering calls, Defendants Paul or Ellis would falsely state that reports would be forthcoming, along with proof of account balances.  Since that time, no reports or accounting of Plaintiff's investments have been provided by the Defendants.

17. Similarly, redemption requests were initially honored.  However, starting in April 2012, redemption requests ceased being honored.  A partial redemption was made in April 2012 per a February 2012 request, but since then, no further redemption requests have been honored or even acknowledged.  In the last of his e-mails to FIC, on June 26, 2012, Defendant Ellis wrote that he expected that funds would be released by Friday, June 28, 2012.  After that

communication, Defendants PEIA, Ellis and Paul have neither communicated with FIC nor otherwise responded to communications regarding the status of its funds.

18. Defendants Paul and Ellis have gone 'radio-silent.' Telephone calls and e-mails have gone without response. FIC has tried in numerous ways to contact Defendant PEIA and its principals to get some information – any information – on the status and locations of its funds, but to no avail.

19. PEIA used a company called Lightspeed Financial Inc. ("Lightspeed") as its introducing broker to Merrill Lynch, the custodian. Lightspeed processed all of the trades. After getting no response from Defendants PEIA, Paul, and Ellis, FIC contacted Lightspeed. Lightspeed reported that the accounts had been closed at Merrill Lynch "for compliance reasons," and that the money from those accounts had been wire transferred to Wells Fargo Bank.

20. Lightspeed further reported that the very same wires were apparently initially denied, as the money was requested to be transferred to accounts in the name of PEIA. Subsequently, Lightspeed requested that Defendant Ellis "confirm that the names on the accounts are the appropriate entities." *See Email* from M. Maloney to J. Ellis, dated April 20, 2012.

Wells Fargo's Wrongful Conduct

21. Based on the wire information from Lightspeed, FIC learned for the first time that ostensibly, Defendant PEIA had established account(s) in FIC's name using FIC's funds. The wire transfer information from Lightspeed showed that Defendant Wells Fargo's Philadelphia branch office held an account in the name of FIC, in which at least three hundred and thirty-eight thousand dollars was being transferred.

22. FIC did not in fact establish this account with Defendant Wells Fargo, nor did FIC authorize PEIA to establish this account. Upon learning of the existence of said account, FIC made timely written demand upon Defendant Wells Fargo to: (1) allow access to these accounts in the name of or for the benefit of FIC and any account to which funds were transferred; (2) freeze all such accounts; and (3) return all such amounts via wire transfer to FIC's account in Anguilla. In the alternative, FIC demanded that the funds be interpleaded into a court of appropriate jurisdiction until such time as the court could determine the appropriate owner of the funds. FIC highlighted its deep concern that Wells Fargo allowed the unauthorized opening of accounts in FIC's name and had apparently allowed the unauthorized movement of significant sums of FIC's money into accounts over which FIC has no access or control. Tellingly, FIC received no reply whatsoever to its demand letter to Wells Fargo.

23. Defendant Wells Fargo is a national banking association. It is required by federal statute and banking regulations to have a detailed anti-money laundering program to detect fraud and illegal activity. This anti-money laundering program must include policies, procedures, and internal controls to ensure that compliance is ongoing, as well as training of personnel and reporting requirements.

24. The transactions described above are highly irregular and violate federal and state banking law, as well as good banking practices. Despite the clear legal requirements, Defendant Wells Fargo simply ignored its own obligations under the law and ignored FIC's demand for the return of its funds.

25. Defendant Wells Fargo aided and abetted the other Defendants in their scheme to defraud FIC by allowing them to move FIC's money into accounts in the name of others, or with knowledge that the accounts contained monies belonging to others. Defendant Wells Fargo also

allowed PEIA to transfer hundreds of thousands of dollars of FIC's monies at will.  As a result, the bank (both institutionally and through its employees) had actual and/ or constructive knowledge of wrongful conduct by PEIA and its principals, and provided substantial assistance to them.

26.    To date, FIC continues to sustain  losses, which exceed a million dollars (the "Funds").  Defendants PEIA, Ellis, Paul, and Wells Fargo have all refused to communicate with FIC about the status of its accounts or about the Funds.   As a result, FIC cannot obtain any information about its Funds.

## COUNT ONE
### CONVERSION AGAINST DEFENDANTS PEIA, PAUL AND ELLIS

27.    Plaintiff reincorporates and re-alleges paragraphs 1-26 as if fully set forth herein.

28.    Defendants PEIA, Ellis, and Paul have improperly and without authorization taken specific sums of money from FIC permanently.

29.    Demands have been made on all four Defendants for the return of the specific sums.  Those demands have gone unmet.

30.    Plaintiff, by assignment, now owns FIC's interest in and right to the Funds, and has been damaged by the Defendants' improper actions.

## COUNT TWO
### AIDING AND ABETTING CONVERSION AGAINST DEFENDANT WELLS FARGO

31.    Plaintiff reincorporates and re-alleges paragraphs 1-30 as if fully set forth herein.

32.    Defendants PEIA and its principals converted the Funds.  As a result, Defendants PEIA, Ellis and Paul exercised wrongful dominion and control over the Funds.  Such conversion has permanently deprived Plaintiff of its property.

33. Defendant Wells Fargo, institutionally and through its employees, who were acting within the scope of their employment, knowingly, willfully and with knowledge provided Defendants PEIA, Ellis, and Paul substantial assistance in converting the property.

34. Defendant's improper and wrongful actions have directly caused injury and damage to Plaintiff.

## COUNT THREE
### FRAUD AGAINST DEFENDANTS PEIA, ELLIS AND PAUL

35. Plaintiff reincorporates and re-alleges paragraphs 1-34 as if fully set forth herein.

36. Defendants PEIA, Ellis, and Paul made numerous misrepresentations of material fact that there would be transparency and liquidity of the investments. Specifically, the Defendants represented that:

**Strategy**

Paul-Ellis Investment Associates (PEIA) first segregates each investment mandate for the wealth management through its managed platform and financial custodians. PEIA's wealth management approach is a tactical trend following portfolio custom-tailored to each mandate. PEIA utilizes five proprietary developed core investment strategies as a component of its approach. PEIA considers its approach constitutes proper and long-term risk adverse management verses traditional money management methods. The portfolio(s) offered to each investor is predicated from the client discovery process. It is designed to produce a select performance and analytical risk measurements while addressing the client's criteria such as growth, income, lifestyle needs, etc.

Breaking the mold of Modern Portfolio Theory (MPT)

Instead of making investors' eyes glaze over with the explanation of quadratic optimization, standard deviation and returns relative to the benchmark, why not put things plainly? What is the greater risk that we fail to beat the S&P 500, or that you fail to meet your return expectations? The basic tenets of Modern Portfolio Theory would have you believe that your risk will be reduced by combining investments that show low historical correlation. What MPT fails to consider is that in a market crisis nearly all investment correlations increase. Put another way, in chaotic markets everything can go down. Most people tend to take the simple and make it complex.

Enter the concept of Minimalist Portfolio Theory. What are the characteristics of a good investment choice? It's not low PE's, disruptive technology, China or any other buzzword we've omitted. The most important characteristic to a successful investment is that the price rises. And that is precisely what we focus on, rising prices. Why bother trying to predict which company will be the next Google when it will become evident by the company's share price appreciation?

Minimalist Portfolio Theory Simplified

1. Select Investment Return Targets
2. Select Investment Universe
3. Determine Strength of Selected Investment Universe
4. When in Wealth Accumulation mode we select investments favored from our selected universe
5. When in Preservation mode we utilize the defensive strategy dictated
6. Monitor indicators and positions and adjust accordingly …..

Portfolio Management

Each of the portfolios differentiate themselves from typical investments in two primary ways. First, they all use a Sector Rotation style to select the strongest performing securities. Secondly, they all have a defensive strategy for when their particular style is underperforming.

Why Sector Rotation?

Markets and sectors rotate in and out of favor just as produce does at the supermarket. We utilize a logical, disciplined approach to select what is in season.

Relative Strength

Relative Strength is simply the continuous comparison of the performance of two or more investments. When an investment begins losing ground it systematically eliminates itself from the portfolio. Likewise when an investment gains ground it systematically adds itself to the portfolio.

Asset Protection

Unfortunately there will always be periods of market chaos. By having a defensive strategy we can preserve capital during these periods and have the confidence to invest capital when prudent.

Product Design

- The Trade Winds Portfolios have been structured to provide complete clarity and transparency seldom associated with International and Institutional investments.

Liquidity

- New purchases will be accepted immediately
- Liquidations require 15 calendar days advanced notice in writing
- All redemptions will be available 5 business days after the 1st of the month following the redemption request

Transparency

- Management and Trust Advisors will have access to the portfolio composition and values on a daily basis
- Updates will be provided from sub-advisors monthly or upon request
- Online updates through PEIA and Merrill Lynch

Merrill Lynch

- Merrill Lynch will provide execution, clearing and custodial services to the portfolios
- Merrill Lynch will provide online access and monthly reports

www.paulellisllc.com/strategy

37. Defendants PEIA, Ellis, and Paul induced FIC to invest in their funds based on the foregoing misrepresentations.

38. Defendants PEIA, Ellis, and Paul knew, should have known, and/or recklessly disregarded the fact that these misrepresentations were false.

39. Defendants PEIA, Ellis, and Paul intended that the misrepresentations would induce the FIC to act to its detriment.

40. FIC was ignorant of the falsity of the misrepresentations and reasonably relied on the truthfulness of the statements.

41.     Plaintiff, having taking assignment of FIC's claims, was damaged by the misrepresentations made by Defendants PEIA, Ellis, and Paul.

## COUNT FOUR
### UNJUST ENRICHMENT AGAINST PEIA, ELLIS, AND PAUL

42.     Plaintiff reincorporates and re-alleges paragraphs 1-41 as if fully set forth herein.

43.     FIC conferred a benefit on Defendants PEIA, Ellis and Paul in the sum of over $5,000,000.00 in cash, of which more than $1,000,000.00 has been retained by them as a benefit.

44.     Each and every Defendant has knowledge of the benefit conferred.

45.     Defendants accepted and retained the benefit conferred.

46.     The Defendants were unjustly enriched by obtaining FIC's funds, by requesting FIC to perform, and/or by knowingly and voluntarily accepting the benefits of FIC's performance. The circumstances are such that it would be inequitable for Defendants to retain such benefits without paying fair value therefore.

47.     Plaintiff, having taken assignment of FIC's claims, was damaged by the Defendants PEIA, Ellis, and Paul's actions.

## COUNT FIVE
### NEGLIGENCE AGAINST DEFENDANT WELLS FARGO

48.     Plaintiff reincorporates and re-alleges paragraphs 1-47 as if fully set forth herein.

49.     At all relevant times, Defendant Wells Fargo had a duty to FIC to handle funds belonging to it in accordance with its own policies and procedures, and in accordance with commercial standards and practices followed in the banking community.

50.     At all relevant times, Defendant Wells Fargo had a duty to FIC to open accounts, monitor the flow of funds, and identify the source of funds in accordance with its own policies

and procedures, and in accordance with commercial standards and practices followed in the banking community.

51.     At all relevant times, Defendant Wells Fargo had a duty to FIC to timely act upon information regarding competing demands upon funds and/or information that funds in its possession were wrongfully being held, in accordance with their own policies and procedures, and in accordance with commercial standards and practices followed in the banking community.

52.     Defendant Wells Fargo breached the foregoing duties in a number of ways, including allowing Defendants PEIA, Ellis, and Paul to open an account in the name of FIC; allowing Defendants PEIA, Ellis, and Paul to open accounts in their own name with funds belonging to FIC; failing to properly verify the source of funds; failing to act diligently and promptly upon being advised that the funds were the property of FIC; failing to interplead the funds into a court of competent jurisdiction; and failing to respond to FIC about the status and location of the Funds upon learning of Defendants PEIA, Paul, and Ellis' wrongful actions.

53.     Defendant Wells Fargo failed to exercise ordinary care and due diligence, which failures substantially contributed to the losses at issue. Defendant Wells Fargo either did not have proper procedures in place or failed to follow such procedures.

54.     As a direct and proximate result of Defendant Wells Fargo's failure to use ordinary care and exercise due diligence, Plaintiff has suffered substantial losses.

## COUNT SIX
### FRAUDULENT CONCEALMENT AGAINST DEFENDANT WELLS FARGO

55.     Plaintiff reincorporates and re-alleges paragraphs 1-54 as if fully set forth herein.

56.     Defendant Wells Fargo failed to disclose to FIC that: (1) it had opened an account in FIC's name; (2) it had received the Funds; and/or (3) the status and location of the account and/or Funds.

57. Defendant Wells Fargo knew or should have known that these material facts should be disclosed to FIC and not concealed.

58. Defendant Wells Fargo acted in bad in faith in concealing these material facts.

59. Defendant Wells Fargo knew that by concealing and failing to disclose these material facts, FIC would be induced not to act.

60. Plaintiff, having taking assignment of FIC's claims, was damaged by the Defendant Wells Fargo's concealment and failure to disclose.

61. Defendant Wells Fargo had a duty to FIC to disclose these material facts to it. In addition, FIC's opportunity to learn of these material facts was not equal to that of Defendant Wells Fargo, who was a superior position at all relevant times. And, Defendant Wells Fargo undertook a duty to make such disclosures when it accepted to open an account in the name of FIC and/or to deposit the Funds belonging to FIC.

## COUNT SEVEN
### CONSPIRACY AGAINST ALL DEFENDANTS

62. Plaintiff reincorporates and re-alleges paragraphs 1-61 as if fully set forth herein.

63. In 2012, the Defendants conspired together to defraud FIC. The Defendants executed the conspiracy by agreeing to use the Defendant Wells Fargo's bank accounts and the banking relationship between and among Defendants PEIA, Ellis, and Paul to illegally obtain the Funds.

64. As a direct and proximate result of Defendants' conspiracy, the Plaintiff suffered substantial losses.

## COUNT EIGHT
### ACCOUNTING

65.     Plaintiff reincorporates and re-alleges paragraphs 1-64 as if fully set forth herein.

66.     As set forth above, the Defendants PEIA, Paul, and Ellis engaged in defrauding and converting the Funds.

67.     Due to the complex nature of the various "portfolio funds' ostensibly established by Defendants, the numerous deposits and redemption requests, and the apparent multiple transfers of funds, along with the complex nature of the transactions at issue, it is difficult to state with certainty the full extent and amount gained by the Defendants PEIA, Ellis, and Paul through their scheme.

68.     The relationship between Plaintiff and Defendants was one of a fiduciary nature. By allowing Defendants to hold Plaintiff's money, confidence was reposed by Plaintiff, and a trust was accepted by Defendants, therefore creating a fiduciary relationship.

69.     Because of the nature of the transactions involved, including redemption requests, there is no adequate remedy without an accounting.  An accounting would reveal the funds and assets Plaintiff is entitled to and the disposition of said funds, at various times, including the tracing of such assets to the present time.

70.     Plaintiff requests a forensic accounting for each of the Defendants PEIA, Paul, and Ellis, and for each bank account owned or controlled by any one or all of them.

## COUNT NINE
### CONSTRUCTIVE TRUST

71.     Plaintiff reincorporates and re-alleges paragraphs 1-70 as if fully set forth herein.

72.     Plaintiff has legal and equitable title in the funds it transferred to Defendants to hold for a particular purpose.

73.     As a result of fraud and the abuse of confidence, Defendants induced the transfer of funds to be held by Defendants and were unjustly enriched at the expense of Plaintiff.

Because the Defendants wrongfully obtained funds and assets through fraud and other tortious conduct, the Defendants should be constrained from enjoying the beneficial interest in the funds and assets, or property obtained with the Funds, and should not be unjustly enriched.

74. A constructive trust should therefore be imposed in favor of Plaintiff over the misappropriated and converted Funds and over any and all property acquired with such Funds.

## PRAYER FOR RELIEF AND DEMAND FOR A JURY TRIAL

WHEREFORE, Plaintiff prays for trial by jury and requests that the Court:

a. Enter judgment in favor of Plaintiff and against Defendants jointly and severally;

b. Award Plaintiff compensatory damages in an amount to be determined at trial;

c. Impose a constructive trust on Defendants PEIA, Ellis, and Paul for the proceeds (including profits and fees) from unlawful activity relating to Plaintiff;

d. Order a forensic accounting as to Defendants PEIA, Ellis, and Paul, and for each bank account owned or controlled by any one or all of them;

e. Order such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

Stewart Marcos Cooke, Esq.
Cooke Law, P.A.
Counsel for Plaintiff
1395 Brickell Ave., Suite 200
Miami, Florida  33131
Telephone:    (305) 400 -0870
Facsimile:     (305) 489-7968

BY: /s/ Stewart M. Cooke, Esq.
Stewart Marcos Cooke, Esq.
Florida Bar No.: 321450